EMIL T. HARTJE, Defendant in Error, *vs.* GEORGE MOX-
LEY, Plaintiff in Error.

*Opinion filed June 18, 1908.*

1. AUTOMOBILES—*section 18 of Motor Vehicle act construed.*
Under section 18 of the Motor Vehicle act of 1907, in an action for
injury caused by an automobile to person or property, proof that
the automobile was being driven at a rate of speed prohibited by the
act makes a *prima facie* case of negligence; but the plaintiff must
further prove that such negligence was the proximate cause of the
injury and that he was not guilty of contributory negligence.

2. SAME—*sections 10 and 18 of Motor Vehicle act supersede
former ordinances.* Local authorities are without power to suspend
or lessen the restrictions imposed upon the use of motor vehicles
by sections 10 and 18 of the Motor Vehicle act of 1907, and the
fact that park authorities may have passed ordinances regulating
the use of automobiles prior to the time the Motor Vehicle act took
effect does not suspend the operation of the act within the jurisdic-
tion of such authorities.

3. SAME—*proviso to sub-section "c" of section 10 of Motor Ve-
hicle act must always be given effect.* In determining what is the
highest lawful rate of speed at which an automobile may be driven
in a particular locality, the proviso to sub-section "c" of section 10
of the Motor Vehicle act, limiting such speed in any case to a rea-
sonable speed, having regard to the traffic and use of the highways,
etc., must always be given effect.

4. CONSTITUTIONAL LAW—*section 18 of the Motor Vehicle act is
within the title of the act.* Section 18 of the Motor Vehicle act,
making the driving of an automobile at a prohibited speed *prima
facie* evidence of negligence in case of an injury by the automobile
to person or property is within the title of the act, which states the
purpose of the act to be, among other things, for "regulating the
use and speed" of motor vehicles.

5. SAME—*section 18 of the Motor Vehicle act is not invalid,
as being special legislation.* Section 18 of the Motor Vehicle act,
providing that proof that an automobile was driven at a prohib-
ited speed is *prima facie* evidence of negligence, is not in vio-
lation of section 22 of article 4 of the constitution, upon the ground
that it confers upon the persons claiming to have been injured by
a moving automobile a special advantage in the trial of a suit to
recover damages for the injury.

WRIT OF ERROR to the Municipal Court of Chicago;
the Hon. STEPHEN A. FOSTER, Judge, presiding.

DELAVAN B. COLE, for plaintiff in error:

Section 18 of the Motor Vehicle law of 1907 is unconstitutional and void, for the reason that it contravenes the provisions of section 13 of article 4 of the constitution of the State of Illinois. *People* v. *Busse,* 231 Ill. 251; *Rouse* v. *Thompson,* 228 id. 522; *Milne* v. *People,* 224 id. 125; *Allardt* v. *People,* 197 id. 501; *Woodruff* v. *Coal Co.* 182 id. 480; *Dolese* v. *Pierce,* 124 id. 140; *Leach* v. *People,* 122 id. 420; *People* v. *Protestant Deaconesses,* 71 id. 229; *State* v. *Baum,* 33 La. Ann. 981; *Adams* v. *Webster,* 26 id. 144.

Under the law of this State, in the absence of a statute to the contrary, the violation of a statute or municipal ordinance limiting speed is *prima facie* evidence of negligence, merely, but is not *prima facie* evidence of the plaintiff's right to recover. *Railroad Co.* v. *Johnson,* 103 Ill. 512; *Railway Co.* v. *Henks,* 91 id. 406; *Railway Co.* v. *Eaves,* 42 id. 288; *Railroad Co.* v. *Loomis,* 13 id. 548.

In the absence of a statute establishing a different rate, the burden of proof, in the sense of an obligation to sustain the issue by a preponderance of the evidence, never shifts from the party having the affirmative of the issue, during the course of the trial, but it remains with him throughout. *Casualty Co.* v. *Weise,* 182 Ill. 496; *Railway Co.* v. *Louis,* 138 id. 9; *Egbers* v. *Egbers,* 177 id. 82.

Section 18 of the Motor Vehicle law of 1907 is unconstitutional and void, in that it was enacted in violation of the provisions of section 22 of article 4 of the constitution of the State of Illinois. *Manowsky* v. *Stephan,* 233 Ill. 409; *Jones* v. *Railway Co.* 231 id. 302; *Horwich* v. *Laboratory Co.* 205 id. 497; *Gillespie* v. *People,* 188 id. 176; *Noel* v. *People,* 187 id. 587; *Lippman* v. *People,* 175 id. 101; *Harding* v. *People,* 160 id. 459.

Section 40 of chapter 3 of the general ordinances of the West Chicago Park Commissioners was not repealed by the

Motor Vehicle law of 1907, and the trial court should have admitted it in evidence. Laws of 1907, secs. 13-21, p. 510; *Ridgway* v. *County of Gallatin,* 181 Ill. 521; *County of Cook* v. *Gilbert,* 146 id. 268.

BOWERSOCK & STILWELL, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In the municipal court of Chicago Emil J. Hartje, defendant in error, recovered a judgment against George Moxley, plaintiff in error, for the sum of $265, for damages to an automobile belonging to the former, resulting from a collision occurring in that city between that automobile and an automobile owned and driven by the latter. It was charged that the collision and the damages resulted from the fact that Moxley was driving his machine at a high and negligent rate of speed. The court based the instructions, in part, upon the provisions of section 18 of the Motor Vehicle act. (Laws of 1907, p. 510.) Moxley regards that section as unconstitutional, and has sued out this writ of error to review the record of the municipal court.

Section 18 provides: "Nothing in this act shall be construed to curtail or abridge the right of any person to prosecute a civil action for damages by reason of injuries to person or property resulting from the negligent use of the highways by the driver or operator of a motor vehicle or its owner or his employee or agent. And in any action brought to recover any damages for injury either to person or property caused by running any motor vehicle at a greater rate of speed than designated in section 10, the plaintiff or plaintiffs shall be deemed to have made out a *prima facie* case by showing the fact of such injury and that such person or persons driving such motor vehicle or vehicles was at the time of such injury running the same

at a speed in excess of that mentioned in said section 10, or at an unreasonable rate of speed as set forth in clause *c* of said section." The speed permitted by section 10 in that portion of the city of Chicago where the collision occurred cannot, under any circumstances, exceed fifteen miles per hour. In determining the highest lawful rate the proviso to sub-section *c* of section 10 must always be given effect.

It is first contended that the section is void because the subject matter thereof is not expressed in the title of the act. Plaintiff in error construes section 18 as meaning that a *prima facie* case showing the liability of the party operating the automobile is made out by proving that the automobile was traveling at a forbidden rate of speed and that an accident occurred in which the automobile was in some manner concerned, without any reference as to whether or not the moving automobile was the proximate cause and as to whether or not the plaintiff contributed to the injury. Such a construction is wholly unwarranted. The provision in regard to a *prima facie* case applies in a case brought to recover damages for an injury caused by running a motor vehicle at an unlawful and negligent rate of speed. Such an injury could not be so occasioned unless running the vehicle at the prohibited rate was the proximate cause of the injury, and could not, in law, be regarded as so caused unless the party injured in person or property was free from contributory negligence. Proving that the vehicle is driven at a prohibited rate of speed makes a *prima facie* case of negligence on the part of any party chargeable with so driving the machine. The plaintiff in the case is still left to show that such negligence was the proximate cause of the injury and that he (the plaintiff) was not guilty of contributory negligence. The law was so stated to the jury by instructions given.

It is said, however, that the general subject of the act, as indicated by its title, cannot reasonably be held to include the establishment of a new rule of evidence in suits for

damages, and that such rule found in section 18 is not at all germane to the title. The title states the act to be, among other things, for "regulating the use and speed" of motor vehicles. An act which simply fixed a maximum rate at which a motor vehicle might be driven, if in the law of the State there was no provision visiting punishment or placing a burden upon the person violating the act, would be of no avail. If an act shows by its title that it is designed to regulate the use and speed of such vehicles, a person examining the title would reasonably expect to find provisions in the act visiting such penalties and imposing such burdens upon violators of the act as would give the act vitality, and this provision in reference to establishing a *prima facie* case of negligence is of that character.

It is also urged that section 18, *supra,* violates section 22 of article 4 of the constitution of the State in that it is special legislation, for the reason that it confers upon persons who claim to have been injured by a moving automobile a peculiar advantage in the trial of a case to recover damages resulting from the injury, by application of a rule of evidence not applicable where the injury results from negligently moving a vehicle not included in the Motor Vehicle law. The classification is made primarily to govern those operating motor vehicles and prevent injuries to persons and property consequent upon their negligent use. The vehicles covered by the act are of such a character as that they properly form a class to which, alone, legislation may apply. Under the construction which we have above placed upon this section it is not the subject of constitutional objection.

By the second proviso to section 13 of the act it is provided that local authorities having jurisdiction over "the public parks and boulevards connecting or pertaining to the same" shall not by the terms of the act be prohibited from adopting and enforcing reasonable ordinances, rules or regulations concerning the speed at which motor vehicles may

be operated upon such parks, park-ways or boulevards. The plaintiff in error sought to introduce ordinances of the West Chicago Park Commissioners showing that the boulevard where the accident occurred was within the jurisdiction of that corporation, and that it had established, by ordinance, the rate of speed for motor vehicles in the parks and boulevards under its control prior to the time when this act came into force, contending that for these reasons sections 10 and 18 of the act in question were not in force at the place of the collision. These sections were in force wherever the jurisdiction of the State of Illinois extends, except, possibly, the speedways included in the first proviso to said section 13, as to which no opinion is now expressed. The second proviso to section 13 now relied upon authorizes the authorities therein mentioned to make regulations further limiting the use and speed of motor vehicles. Counsel asserts, however, that as the ordinances were in force when the act was passed the latter does not apply, because the repealing clause therein contained "is not broad enough to include the repeal" of the ordinances. This is an error of counsel which results from taking too seriously the ordinances of the West Chicago Park Commissioners. Those ordinances are here entirely negligible. Local authorities are without power to suspend the provisions or lessen the restrictions of sections 10 and 18.

It is then urged that the verdict is against the manifest preponderance of the evidence, and that for this reason the judgment should be reversed. The accident occurred about 2:30 o'clock A. M. on Monday, August 12, 1907, at the intersection of Ashland boulevard and Jackson boulevard. Jackson boulevard runs east and west and intersects Ashland at right angles. At the time of the accident Moxley was driving his machine west on the south or left side of Jackson boulevard, and with him in his car were four other persons. Hartje kept his automobile for hire, and at the time of the collision was driving his car south on the west

side of Ashland, carrying one passenger. The cars met near the south-west corner of the intersection of the boulevards. Upon the trial Moxley and a friend, Victor Hugo Greffoz, who was riding with him on the front seat of his car, testified that as the machines collided the Moxley car was traveling at a rate of from ten to fifteen miles an hour and that the Hartje car was traveling at a rate of from twenty-five to thirty miles an hour. Hartje and his passenger testified that Hartje's car was traveling at a rate of six or seven miles per hour, and that as they saw the Moxley car but an instant before the impact they could make no accurate estimate of the speed at which it was traveling but that it was moving at a much greater rate. A cab driver testified, on the part of the plaintiff, that he was traveling east on his cab on Jackson boulevard, less than a block east of Ashland, as the Moxley car approached; that as the latter was on the wrong side of the boulevard and did not turn across he was obliged to ·drive his cab to the north side of the way; that his attention was in this manner particularly called to the automobile; that observing its high rate of speed he turned to watch it, saw the accident, and stated that the Moxley car was then moving at the rate of thirty miles per hour. There is no other material conflict in the testimony. On the afternoon of the preceding day, Sunday, at about two o'clock in the afternoon, Moxley and Greffoz went riding in the city in the Moxley machine. Towards evening they picked up a man who was a friend of Moxley's, and it is said that this friend "had a bundle." This individual is not otherwise identified, and the quoted words are used in the slang of the period to indicate a man who was intoxicated. During the evening the party rode about the city and frequently stopped at public resorts, where they partook of refreshments and intoxicating liquors. They so continued until about midnight, when they called on some women who were friends of the man with the bundle. The three men here, drank intoxicating

liquors, and upon leaving called on two women residing on Michigan avenue, who were friends of Greffoz. During this call intoxicating liquors were served and partaken of by all. Then the entire party, Moxley, Greffoz, the man with the bundle and the two women, went in the automobile to the Bismarck, a summer garden on the north side of the city. When they arrived there the place was just being closed for the night. They were unable to obtain drinks and left immediately. After going south they went west on Jackson boulevard until the collision occurred, Moxley and Greffoz riding in the front seat, the man with the bundle and the two women in the rear seat. Immediately after the accident Hartje, according to his undisputed testimony, said to Moxley, "What do you think you are on?— a race track?" Moxley said, "Never mind giving a lecture." Hartje inquired, "What is your name?" Moxley replied, "Jones." Shortly thereafter, however, the police arrived with a patrol wagon and Moxley then gave his name correctly. On the trial Moxley did not call the man with the bundle nor either of the women, all of whom might reasonably have been expected to corroborate him if he was telling the truth. Counsel for Hartje, in cross-examining Moxley, sought to ascertain the names of these persons. The court, for some reason which is not disclosed by the record and which is not apparent to us, sustained the objection of Moxley's counsel to this cross-question. The jury arrived at the conclusion that the testimony of Moxley and Greffoz was untrue, and we are satisfied from an examination of this record that they were justified in so doing.

The judgment of the municipal court will be affirmed.

*Judgment affirmed.*